UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at KNOXVILLE

DANIEL ALFORD, )
)
    *Petitioner*, )
v. ) No. 3:10-cv-252; 3:05-cr-71(1)
) *Judge Jordan*
UNITED STATES OF AMERICA, )
)
    *Respondent*. )

## MEMORANDUM OPINION

Petitioner Daniel Alford ("Petitioner" or "Alford"), through his attorney, has filed a motion to vacate, correct, or set aside his sentence pursuant to 28 U.S.C. § 2255, (Doc. 86).[1] The United States has filed a response in opposition and petitioner a reply to that response, (Docs. 91, 94). For the reasons which follow, the § 2255 motion to vacate will be **DENIED**.

### I. Standard of Review

Title 28 United States Code section 2255(a) provides that a federal prisoner may make a motion to vacate, set aside, or correct his judgment of conviction and sentence on the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court lacked jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. As a threshold standard, to obtain post-conviction relief under § 2255, a motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

---

[1] All citations to the record refer to Alford's criminal case file (No. 3:05-cr-100).

Petitioner bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings, *Reed v. Farley*, 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993), and he likewise bears the burden of articulating sufficient facts to state a viable claim for relief under 28 U.S.C. § 2255. A § 2255 motion may be dismissed if it only makes vague conclusory statements without substantiating allegations of specific facts and thereby fails to state a claim cognizable under § 2255. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972).

An evidentiary hearing is unnecessary if there are no material issues of fact in dispute or if the record conclusively shows that petitioner is not entitled to relief under § 2255. The Court finds that, based on the following discussion, no evidentiary hearing is required.

## II. Procedural Background

On July 19, 2005, the federal grand jury returned an indictment charging Alford with possession with the intent to distribute 5 grams or more of cocaine base (crack), a violation of 21 U.S.C. § § 841(a)(1) and 841(b)(1)(B), (Doc. 2). Following his trial on April 2-3, 2005,pPetitioner was convicted, (Doc. 64), and thereafter was sentenced to a 400-month term of imprisonment, (Docs. 71, 73). Alford filed a direct appeal, but the judgment was affirmed. *See United States v. Alford*, 332 Fed. Appx. 275, 2009 WL 1587267 (6th Cir. June 9, 2009). Petitioner timely filed the instant § 2255 motion on June 7, 2010.

## III. Factual Background

The underlying facts were summarized in the Sixth Circuit's opinion on Alford's direct appeal.

> On the night of July 1, 2006, Officers Christopher
> Bell and Joseph Huckleby of the Knoxville Police

2

Department were working extra security detail at Club Malibu 7 on Martin Luther King Boulevard in Knoxville, Tennessee. Officer Bell testified that he observed [petitioner] driving his car westbound on Martin Luther King Boulevard. Officer Bell had known [petitioner] for years and had interviewed him in connection with an unrelated investigation several days earlier. From that investigation, Bell knew that [petitioner] did not have a valid driver's license, so he contacted the records operator at the police department to determine the status of [petitioner]'s license. Officer Bell then positioned his patrol car so he could initiate a traffic stop and turned on his in-car video camera. When [petitioner] passed by again, Bell activated his blue lights and effected a traffic stop. Bell arrested [petitioner] for driving without a license and placed him in the back seat of the patrol car.

Officer Huckleby acted as backup. As Bell was taking [petitioner] into custody, Huckleby walked up to [petitioner]'s vehicle and removed the keys from the ignition and placed them on the hood of the car. He observed two clear plastic bags, side by side, on the front seat. One bag contained an off-white, rock-like substance, and the other bag contained a white powdery substance. Huckleby directed Bell's attention to the drugs. Officer Bell testified that, like Huckleby, he believed the bags contained crack and cocaine powder.

The crack cocaine had been cut into twenty-one small rocks that Bell estimated had a street-value of approximately $40 per rock. Bell testified that [petitioner] did not have a pipe necessary to smoke the crack in his possession or vehicle. Bell searched [petitioner] incident to his arrest and found $230 in cash, in $20 denominations except for three $10 bills.

Bell advised [petitioner] of his Miranda rights after [petitioner] was placed in Bell's patrol car. Defendant told Bell that the powder cocaine was his, and that he had sold crack cocaine before, but denied that he had sold crack cocaine that day. Testing revealed that one

3

bag contained 2.7 grams of cocaine hydrochloride, or powder cocaine, and the other bag contained 5.7 grams of cocaine base, or crack cocaine.

Agent Dave Lewis with the Drug Enforcement Administration (DEA) testified as an expert witness in narcotic drug trafficking practices. Lewis testified that a street-level crack dealer generally possesses numerous rocks of crack cocaine to sell to individual buyers, whereas a user will typically obtain only one or two crack rocks at a time. Lewis explained that, because crack is such a highly addictive drug, a person who uses crack becomes instantly addicted, cannot function in society, cannot maintain employment, and will use all of his money to buy crack. Further, a crack addict generally has no money except the amount necessary to buy the next rock.

Lewis testified that crack possessed for personal use generally will be a "very small quantity" that can be consumed in one sitting. A user of crack will possess one or two crack rocks, as well as a pipe or glass tube, and will go to the nearest location to smoke it after purchasing it. Lewis testified that, based on his experience, persons who distribute crack possess sums in denominations of $20 bills since crack rocks are sold for $20 and $40 apiece.

On cross-examination, [petitioner] asked whether Lewis's opinion would be different if Lewis knew that [petitioner] had a "$300 to $500 a day habit" using crack cocaine. Lewis responded that if [petitioner] had such a drug addiction, he would not have had the cash he possessed and he would not have both powder and crack cocaine. Lewis also stated that, in his experience, crack users generally are not in possession of both sums of cash and drugs at the same time.

[Petitioner]'s only witness was his half-brother, Calvin Carson. Carson testified that he had used powder and crack cocaine for about twelve years and could use up to $500 worth of powder cocaine a day and up to $300 a day of crack cocaine. Carson testified that he could

4

easily smoke 20 rocks of crack cocaine a day "because it just didn't last that long" and that he would buy in quantity. Carson testified that [petitioner] was smoking crack at the time Carson quit using it. Carson did not believe that [petitioner] had "ever quit using drugs." On cross-examination, Carson stated that when he was addicted, he never went anywhere without his crack pipe, but added that if he did not have it with him, he could always make a pipe using a bottle. Carson explained that as soon as he got a crack rock, he would put it in his pipe and start smoking it. Carson testified that after he smoked the rock, he would use any money to purchase more rocks or steal to get more money, and agreed that money did not stay in his pocket very long.

The parties rested at the end of the day. The next morning the district court instructed the jury. The jury convicted [petitioner] of possession with intent to distribute five grams or more crack cocaine.

At sentencing, [petitioner] was deemed a career offender pursuant to U.S.S.G. § 4B1.1 based on a prior state felony drug conviction for attempted possession with intent to sell less than 1/2 gram of cocaine hydrochloride in state court, and a prior federal conviction for conspiracy to commit arson, resulting in a total offense level of 37. [Petitioner]'s prior convictions resulted in 17 criminal history points, which was reduced to 16 points as limited by the Guidelines. Because [petitioner] was on probation for misdemeanor assault and had also been released from federal custody on the arson conviction for less than two years, he received an addition of 3 criminal history points, for a total of 19 criminal history points. This put [petitioner] in a criminal history category VI, which was also the category applicable based on his career offender classification. With a total offense level of 37, the advisory Guidelines range was 360 months to life. The district court chose a sentence of 400 months.

*Alford*, 332 Fed. Appx. at 277-279.

5

## IV. Law and Analysis

In his § 2255 motion, Alford maintains that, in seven instances, he received ineffective assistance from James W. Bell, the attorney who was appointed to represent him at trial.

### A. <u>Governing Law</u>

The Supreme Court has established a two-part test for determining when assistance of counsel in ineffective. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). First, a petitioner must show that his counsel's errors were so egregious as to render counsel's performance constitutionally deficient, that is, outside the "wide range of professional assistance. *Id.* at 687. The alleged errors or omissions must be evaluated from counsel's perspective at the time the conduct occurred and under the circumstances of the particular case. *Strickland*, 466 U.S. at 689. In order to show that counsel's performance was deficient, a petitioner must demonstrate "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.

Second, a petitioner must demonstrate prejudice by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.*"* *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Ibid.* A petitioner must demonstrate that, due to counsel's deficient performance, there was a "breakdown in the adversary process that rendered the result of the proceeding unreliable." *Bell v. Cone*, 535 U.S. 685 (2002). Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). When a

6

petitioner's ineffectiveness claim involves alleged sentencing errors, he must demonstrate that there is a reasonable probability that, but for counsel's errors, his sentence would have been different. *Weinberger v. United States,* 268 F.3d 346, 352 (6th Cir. 2001). Finally, because petitioner is seeking relief under § 2255, he bears the burden of proving by a preponderance of the evidence that his counsel was deficient. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

B. **Allegations and Analysis**

At the outset, the United States maintains that none of Petitioner's claims should be considered because they are mere undeveloped bare-bones conclusions, set forth in a series of one-sentence allegations. The Court agrees that Alford has submitted skeletal contentions of incompetent counsel. This method of pleading contravenes Rule 2(b)(2) of the Rules Governing Section 2255 Proceedings, which requires a movant to "state the facts supporting each ground." Rules Governing Section 2255 Proceedings, App. of Forms, Motion Under 28 U.S.C. 2255 at ¶12 (a). Nevertheless, because the United States has responded in opposition to each of Alford's bald assertions and because, in his reply, Alford has supplied allegations of fact to support his claims, with the exception of one claim, the Court opts to review all but the one of those claims on the merits.

1. <u>Trial counsel failed to request an evidentiary hearing and cross examine Dr. Richert DeMier regarding his finding that Petitioner was competent to stand trial.</u>

Upon defense counsel's motion requesting a competency examination of his client, the Court ordered Alford to undergo a mental evaluation at the nearest federal psychiatric facility. Dr. William J. Ryan of the Metropolitan Correctional Center in New York performed the evaluation, submitted a report, diagnosed Alford as having a Schizoaffective Disorder, Depressive Type, and concluded

7

that he was incompetent to stand trial. Dr. Ryan reached this conclusion only after he acknowledged the existence of contradictory evidence regarding petitioner's malingering. That evidence consisted of test results indicative of malingering, but thought and speech disorders, manifested by petitioner, which indicated to the contrary. The Court considered Dr. Ryan's report and, after an evidentiary hearing on the matter, found Alford incompetent to stand trial and ordered him to be returned to a psychiatric facility for further treatment and evaluation. Petitioner was sent to the Federal Medical Center in Springfield, Missouri. Defense counsel then filed a notice of intent to pursue an insanity defense, and the government moved for a mental examination to determine whether Alford had been insane at the time of the crime.

The motion was granted, and the second psychological evaluation was performed by Dr. Richart L. DeMier, whose conclusion was opposite to that of Dr. Ryan's. The second psychologist determined that petitioner was competent to stand trial, and was critical of Dr. Ryan's determination of incompetence on the bases that it was not evidence-based; was founded on a test, which was controversial and of limited diagnostic value; was made only by ignoring clear evidence of malingering. The Court then held a second hearing on the issue, reviewed the psychological report, found Alford competent to stand trial, and set the case for trial.

Defense counsel, obviously dissatisfied with this turn of events, moved for and was granted a private psychiatrist to perform a third competency evaluation of his client. Upon completion of this examination, counsel withdrew his notice of an insanity defense, without filing a copy of the third report with the Court.

Against this factual backdrop, Alford now asserts that a reasonable attorney, given two conflicting psychiatric reports concerning competency issued four months apart, would have requested another competency hearing, during which Dr. DeMier could have been cross-examined.[2] Petitioner further charges that counsel should have contested the Court's competency determination "and/or" its conclusion that Dr. Ryan's competency finding had been sabotaged by Alford's manipulation of the malingering test. These attorney failings, according to petitioner, constituted ineffective assistance.

The United States argues that counsel did not render a deficient performance in this respect. This is so, according to respondent, because petitioner has submitted no proof to support his position and because the record reflects that counsel acted in accordance with the dictates of *Strickland*, in that counsel investigated the competency issue and, based on his reasonable investigation, decided not to pursue the matter further. Thus, respondent insists that Alford's attorney did not blindly accept the DeMier report, but instead conducted an investigation into the matter by talking at length with its author. Only after his conversation with Dr. DeMier did counsel conclude that he had no proof to offer to contest the findings made in the report. And only after counsel received the results of the third competency evaluation—this one by Alford's own mental health expert, Dr. Bruce Seidner, did counsel forego the contemplated insanity defense, (Docs. 51 and 56).

---

[2] The United States understood the claim, as it was pled in the § 2255 motion, to be an attack on counsel's failure to cross-examine Dr. DeMier at the *second* competency hearing. However, in petitioner's reply, he clarified that counsel's alleged shortcoming was his failure to request a *third* competency hearing "at which time he could have subjected Dr. DeMier to the test of cross-examination," (Doc. 94, Petr.'s Reply at 5).

9

*Strickland* teaches that "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Here, the defense attorney sought and received court approval for a private psychologist to conduct a competency evaluation. The results of this third competency assessment were harmful to his client, *see Alford*, 332 Fed. Appx. at 278 (observing that the third expert agreed with Dr. DeMier's competency determination), and counsel's decisions not to continue to press the competency issue or to attack the Court's findings as to Alford's competency and malingering—decisions which were informed by the telephone discussion with Dr. DeMier and the receipt of the third competency evaluation, were tactical choices made after a reasonable investigation. Such decisions are not subject to second guessing and are entitled to be presumed sound trial strategy. *United States v. Friedman*, 1993 WL 386797, *3 (6th Cir. Sept. 30, 1993) ("[T]actical decisions must be particularly egregious before they will provide a basis for relief.") (citing *Martin v. Rose,* 744 F.2d 1245, 1249 (6th Cir. 1984)). Alford has not adduced any evidence to overcome that presumption and, as a result, has not shown any deficiency of performance on counsel's part.

Also, as the United States suggests, petitioner has not shown prejudice ensuing from the alleged deficient performance. Nothing before the Court creates a sufficient doubt as to petitioner's competency. *Mackey v. Dutton*, 217 F.3d 399, 411 (6th Cir. 2000) (A court is only required to conduct a competency hearing where there is "substantial evidence of a defendant's incompetency."). Indeed, the Sixth Circuit's opinion on direct review supports that he was competent, as that Court interpreted Alford's actions (consisting of his *pro se* letter to the Court, explaining that he did not possess the requisite intent to commit the offense, along with his request for a change of venue,

10

Case 3:05-cr-00071 Document 96 Filed 09/18/13 Page 10 of 20 PageID #: 363

which he made by personally addressing the Court at the start of the trial) as substantiating that he understood the proceedings against him.[3]

Therefore, the Court would not have held a competency hearing, even if counsel had so moved, and counsel's failure in this regard did not result in any prejudice. Absent evidence of a prejudicial performance, counsel did not give Alford ineffective assistance. No relief is warranted on this claim.

2.  Trial counsel failed to renew his motion for judgment of acquittal on the ground of insufficiency of the evidence at the conclusion of the trial.

In his reply, petitioner did not elaborate on his factually unsupported claim, nor even include it amongst his other claims. Accordingly, the Court deems the claim to have been abandoned and, alternatively, views it as a conclusory claim, which will not support relief. *Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000) (finding that a conclusory statement is insufficient to raise the issue of ineffective assistance of counsel); *Tucker v. United States*, 423 F.2d 655, 656 (6th Cir. 1970) (pure conclusory statements in a § 2255 motion, absent any specific allegations as to how, when, and where the claimed constitutional infringements occurred, would not be credited).

3.  Trial counsel failed to object at trial to the relevancy and probative value of Special Agent Dave Lewis's testimony and failed to voir dire Agent Lewis at trial.

DEA agent Lewis testified at the trial as to characteristics of crack cocaine trafficking and personal use of the drug. Alford claims that the government's notice that it intended to present this

---

[3] The test for competency is whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960)

11

law enforcement officer to testify as an expert witness in narcotics trafficking and in the method and operation of persons engaged in narcotics trafficking should have prompted counsel to object in advance of the testimony to its relevance and probative value and to demand the details of the expert's proposed testimony; an explanation as to how the testimony would be helpful; and a voir dire of the expert outside the purview of the jury. Counsel's missteps in this regard, so petitioner maintains, constituted ineffective assistance.

The United States counters that Alford has failed to demonstrate either prong of the *Strickland* test with respect to these purported errors. First, respondent posits that conducting a voir dire of Lewis's qualifications was unnecessary, as the expert revealed that information at the beginning of this testimony, and that any further inquiry into his qualifications, by means of a jury-out voir dire, would have been wasteful of the jury's time. Further, there was no prejudice, respondent argues, since subjecting this expert to a voir dire examination and challenging his qualifications would have failed to convince the Court to reject him as an expert in the field, given that the Sixth Circuit has found Agent Lewis to be an expert in the method of operation of drug dealers.

As respondent points out, Lewis's qualifications were spelled out in his direct examination and those qualifications were sufficient for the Sixth Circuit to find him to be an expert in other cases in the modus operandi of drug traffickers. The Court concludes that it was not unreasonable for counsel to decide, as a matter of strategy, not to delve further into those qualifications and to forego a jury-out voir dire of Lewis. Strategic decisions such as this one are strongly presumed to have fallen within the wide latitude afforded counsel in making tactical decisions and to have been based,

12

under the circumstances, on sound trial tactics. *Strickland*, 466 U.S. at 689. After all, an attorney is " entitled to formulate a strategy that was reasonable at the time" and can "avoid activities that appear 'distractive from more important duties.'" *Harrington v. Richter*, 131 S. Ct. 770, 789 (2011) (quoting *Bobby v. Van Hook*, 558 U.S. 4, 11, 130 S. Ct. 13, 19 (2009)).

By the same token, Alford has not shown that the expert actually was unqualified to give expert testimony and that, but for counsel's failure to voir dire this expert, there is a reasonable probability of a different outcome. Absent such a showing, there is nothing which supports that counsel's claimed error resulted in prejudice.

Equally meritless is petitioner's claim that counsel was ineffective for failing to attack the proposed testimony on grounds of relevance and probative value. The defense strategy was to show that Alford possessed the cocaine for personal use and, thus, the use he intended to make of the cocaine was a crucial issue at trial. Lewis's proposed testimony as an expert in the methods of drug dealing would shed light on this central question for the jury and, hence, his testimony was relevant. *See* Fed. R. Evid. 402(a) ("Evidence is relevant if: (a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.")

Indeed, the Sixth Circuit found Agent Lewis's testimony "highly relevant" and stated that it "routinely allows qualified law enforcement officials to testify that circumstances are consistent with drug distribution rather than personal use," and that it has "also held that such expert testimony is not unduly prejudicial, especially if the district court has given a cautionary instruction." *Alford*, 332 Fed. Appx. at 281-82. Such an instruction was included at the close of Alford's trial.

13

Accordingly, because the expert's testimony was relevant and not unduly prejudicial, counsel did not render a prejudicial performance by failing to object to such testimony.

4. Trial counsel elicted Agent Lewis's opinion testimony regarding petitioner's mental state on cross-examination.

According to petitioner, Lewis testified regarding the quantities of cocaine which are consistent with personal use and the quantities of the drug which are consistent with the intent to distribute—subjects which clearly exceeded the scope of his expertise. Petitioner posits that, even if Lewis was qualified to offer the testimony that the amount of cocaine possessed by Alford was consistent with intent to distribute, his testimony was tantamount to an opinion that he was guilty of the offenses with which he was charged—an opinion prohibited by Rule 704(b), of the Federal Rules of Evidence.[4]

Alford suggests that his attorney rendered a deficient performance by eliciting information regarding petitioner's mental state during his cross-examination of Lewis, then by failing to try to discredit or counteract this damaging testimony. For example, when counsel asked Lewis if he knew where petitioner was going when the officers first saw him, Lewis replied, "[t]hat has no bearing on his possession of the crack for resale." When questioned as to the number of crack rocks a heavy user could smoke in one day, Lewis responded that "there is nothing that supports that [amount of drugs] could be possessed for personal use, nothing." Asked whether it was possible that petitioner

---

[4] This rule, in relevant part, provides that "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Fed. R. Evid.704(b).

14

had just purchased the cocaine, Lewis stated that "[t]he point is this is not possession for personal use. Certainly any level of drug trafficker has to buy drugs from the next level up. That doesn't make him, that still makes him a drug trafficker." Other testimony in the same bracket was Lewis's declaration that Alford's history of drug use was irrelevant and that what was relevant, in this officer's opinion, was "that he possessed this for distribution." Still another alleged violation of Rule 704(b) occurred when trial counsel pointed out that, if Alford had just purchased the cocaine, it would still be packaged for resale, to which Lewis responded that it would be "packaged for resale so that he can resell it."

As noted, on direct appeal, the Sixth Circuit stated qualified law enforcement officials typically are permitted to testify that circumstances are consistent with drug distribution rather than personal use. *Alford*, 332 Fed. Appx. at 282. The cited excerpts of Lewis's testimony similarly describe the circumstances underlying petitioner's arrest as being consonant with drug selling, rather than with personal use. Therefore, the testimony complained of did not invade the jury's province to decide the element of intent, but instead, as the Sixth Circuit found when addressing a different aspect of to Lewis's testimony, "helped the jury in resolving the central issue of whether [petitioner] possessed the crack with intent to distribute it." *Alford*, 332 Fed. Appx. at 281-82.

Furthermore, this witness's testimony on direct examination was quite damaging to petitioner, as it explained that his possession of the crack cocaine, as disclosed by the underlying circumstances, was in tune with drug trafficking and incompatible with personal use. Defense counsel chose one of the few options available to him on cross examination—to pursue a strategy calculated to undermine that testimony. Through counsel's inquiries concerning the circumstances

15

surrounding petitioner's possession of the cocaine, he sought to imply that they either were not indicative of drug trafficking or were likewise consistent with personal use.

There was a risk, of course, in cross-examination of Lewis: counsel might prompt a response that was not helpful to his client. The fact that, indeed, this is what happened makes counsel's plan of attack on the expert witness's testimony no less strategic and no less reasonable than it was when it was conceived of by counsel. Given the presumption that counsel's challenged conduct must be considered sound trial strategy, as well as the difficulty encountered by a petitioner in challenging counsel's tactical decisions, the Court finds that counsel's cross-examination of this witness fell "within the wide range of reasonable professional assistance." *See Strickland*, 477 U.S. at 689, *see also Jones v. Harry*, 405 Fed. Appx. 23, 27, 2010 WL 5135612, *3 (6th Cir. Dec. 16, 2010) ("Doing nothing to counter these damaging claims and implications on cross-examination would not have been a wise choice, despite what [petitioner] argues now.")

Moreover, petitioner suffered no prejudice because this expert had offered similar testimony for the jury's consideration during his direct examination. Counsel's cross-examination, even if it underscored Lewis's opinion that the circumstances were indicative of drug dealing and not of personal use of cocaine, resulted in no prejudice, where the testimony which counsel elicited, in effect, had been presented previously to the jury.

5.   <u>Trial counsel failed to request a cautionary instruction regarding Agent Lewis's role as an expert witness after his testimony.</u>

In this claim, Alford maintains that expert testimony in a criminal trial carries with it two dangers. One danger is that of undue prejudice or confusion because of the "aura of special

16

reliability and trustworthiness" which a factfinder may attribute to such testimony. Another risk is that a jury may infer that an expert's opinion is based on knowledge beyond the proof presented at the trial. Petitioner claims that because of these risks, the instruction regarding expert testimony which was given at the conclusion of his trial (i.e., that Lewis had testified as an expert and how the jury should evaluate his testimony) was insufficient to guard against the jury weighing Lewis's opinion testimony as though it were fact. Petitioner therefore argues that a cautionary instruction should have been given in the midst of trial, i.e., when Lewis testified, and that counsel's failure to request that additional cautionary instruction constitutes ineffective assistance of counsel.

On direct appeal, the Sixth Circuit noted that it had previously approved of the same instruction given at the end of Alford's trial as "properly cautioning the jury," and that the instruction was given the morning after a one-day trial, *Alford*, 332 Fed. Appx. at 282, with the obvious implication from these observations being that the instruction given at the end of trial was sufficient to inform the jury that it alone had the duty to decide whether to accept the expert's opinion and how much weight, if any, to assign to that testimony. Furthermore, given the short lapse of time between the testimony and the jury charge, which placed the issue before the jury (i.e., that Lewis had testified as an expert and how that testimony was to be weighed), an earlier cautionary instruction was unnecessary. *Weighall v. Middle*, 215 F.3d 1058, 1063 (9th Cir. 2000) (finding that the failure to request an additional instruction was not unreasonable, where, *inter alia*, the general instruction put the issue squarely before the jury). Finally, petitioner has not demonstrated, or even contended, that the outcome of the case would have been different had counsel requested an additional cautionary instruction. Because of this omission, Alford has not shown prejudice.

17

Accordingly, counsel did not render a prejudicial performance by failing to request an additional and unnecessary cautionary instruction.

6. Trial counsel failed to retain an expert witness to counter Agent Lewis's testimony on the issue of intent to distribute.

In his next ineffective assistance claim, Alford maintains that it was essential to counter or refute Lewis's testimony that the quantity of cocaine he possessed was inconsistent with personal use because that was his sole theory of defense against the drug trafficking charges. But instead of hiring an addiction expert to testify regarding the behavior of drug addicts, counsel relied on petitioner's half-brother, Calvin Carson, to establish that petitioner was a heavy user of cocaine and, thereby rendered ineffective assistance. This issue was raised in Alford's direct appeal. The Sixth Circuit declined to decide the claim but not before it remarked on the absence of proof in the record to show that such an expert was available or that retaining such an expert fell within the prevailing professional norm in drug cases. *Alford*, 332 Fed. Appx. at 283.

In the time which has elapsed since the Sixth Circuit made that comment, the record is unchanged with respect to that issue. Petitioner has yet to show that such an expert exists, or if so, that the expert was available, or if available, that the contents of the expert's proposed testimony would have rebutted that given by Lewis. *See Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005) (noting that no prejudice was demonstrated because petitioner has "not introduced affidavits or any other evidence establishing what [an expert] would have said"); *Sanders v. Trickey*, 875 F.2d 204, 210 (8th Cir. 1989) (a § 2255 movant who offered no witness affidavit or other independent support failed to show prejudice). Moreover, as the Supreme Court has stated, "*Strickland* does not enact

18

Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense." *Harrington*, 131 S. Ct. at 791.

Here, where counsel did not let Lewis's testimony go unchallenged, but rather attempted to show defects in the expert's presentation through cross-examination, the Court finds that counsel's alleged failure to hire an addiction expert did not amount to a deficient performance nor a prejudicial one either.

7.   Trial counsel failed to challenge the factual basis for the pending state charges against petitioner.

Counsel's final alleged shortcoming was his failure to attack the factual basis for his pending state charges, which were used, partly, as the basis for an upward departure. Alford suggests that an accusation does not establish that the charged conduct was that of petitioner and that, indeed, the charges against him were dismissed while his case was on appeal.

In his appeal, petitioner asserted that this Court erred in relying on his pending charges in selecting his sentence. The Sixth Circuit found no error, explaining, in part, that the Sentencing Guidelines instruct that a "district court may consider pending charges in determining whether an upward departure is warranted." *Alford*, 332 Fed. Appx. at 284-85 (citing to U.S.S.G. § 4A1.3(a)(2)(D) (2006)). If there was no error in the Court's consideration of the pending charges against petitioner in fixing his sentence, counsel had no reason to complain about the matter.

Since counsel has no duty to assert a legally baseless claim, *Krist v. Foltz*, 804 F.2d 944, 946-47 (6th Cir. 1986), and since he cannot be ineffective when he does not raise such a claim, *Greer v. Mitchell*, 264 F.3d 663, 676 (2001), petitioner's last claim of ineffective assistance falters.

19

## V. Conclusion

The claims of ineffective assistance raised in this § 2255 motion are meritless. Therefore, the Court will **DENY** the motion.

## VI. Certificate of Appealability

The Court must now consider whether to issue a certificate of appealability (COA) should petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a § 2255 case only if he is issued a COA, and a COA will be issued only where the applicant has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). A petitioner, whose claims have been rejected on the merits, satisfies the requirements of § 2253(c) by showing jurists of reason would find the assessment of the claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court has individually assessed petitioner's claims under the relevant standards and finds that those claims do not deserve to proceed further because they have no viability in light of the governing law. Thus, jurists of reason would not conclude that the disposition of those claims was debatable or wrong. Because petitioner has failed to make a substantial showing of the denial of a constitutional right, a COA will not issue.

A separate order will follow.

**ENTER**:

/s/ Leon Jordan
LEON JORDAN
UNITED STATES DISTRICT JUDGE